UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Dieontae R. Sparks, *Plaintiff* v. Alex Michalski, *et al.* *Defendants* | No. 20 CV 3765  Judge Lindsay C. Jenkins |

**MEMORANDUM OPINION AND ORDER**

Dieontae Sparks ("Sparks" or "Plaintiff") filed this lawsuit against several employees and agents of Will County Jail alleging that his Fourteenth Amendment rights were violated under 42 U.S.C. § 1983 based on an incident with jail staff that resulted in physical injuries in April 2020. Relevant to this opinion, Sparks sued Monica Pieroni ("Pieroni" or "Defendant"), the nurse who observed and treated Sparks immediately following the incident, for providing inadequate and delayed medical care. Before the Court is Pieroni's motion for summary judgment. For the following reasons, the motion is granted.

### I. Background

The following facts are taken from the parties' Local Rule 56.1 statements and supporting exhibits. [Dkts. 80, 83, 91.] "On summary judgment, the Court limits its analysis of the facts to the evidence that is presented in the parties' Local Rule 56.1 statements." *Kirsch v. Brightstar Corp.*, 78 F. Supp. 3d 676, 697 (N.D. Ill. 2015). These facts are undisputed except where a dispute is noted. The Court presents the facts in

the light most favorable to Sparks. *Emad v. Dodge Cty.*, 71 F.4th 649, 650 (7th Cir. 2023).

On April 25, 2020, Sparks was a pretrial detainee at Will County Jail. Sparks got into an altercation with an Emergency Response Team ("ERT") after Sparks purposefully flooded his cell with toilet water when jail staff failed to supply him with new clothes after another inmate threw urine into Sparks's cell. [Dkt. 83 ¶¶ 5-7; Dkt. 91 ¶¶ 4-6.] While the parties dispute what occurred when the ERT entered Sparks's cell (this is the subject of Sparks's complaint against the remaining Defendants), it is undisputed that by the time the ERT removed and restrained Sparks, he had two large knots, or hematomas, on his forehead. [Dkt. 83 ¶ 12; *see also* Dkt. 91 ¶ 11.]

Pieroni examined Sparks shortly after he was removed from his cell as part of a mandatory nursing evaluation that occurs every time an inmate has an interaction with the ERT (the "Assessment"). [Dkt. 83 ¶¶ 13, 22.] The primary purpose of these mandatory evaluations is to ensure the examinee does not require emergency or additional treatment. [*Id.* ¶ 29.] Pieroni was in the process of completing a med pass—a time-sensitive delivery of medicine to inmates—when she was called to give Sparks the Assessment. [*Id.* ¶ 20.] The Assessment, which lasted roughly 2.5 minutes and was recorded, constitutes the sole basis for Sparks's claims against Pieroni.[1] [*Id.* ¶ 18; Dkt. 87 at 12:30-15:00.]

---

[1] A court may consider video evidence on summary judgment, but a video can only resolve a factual dispute where "there could be no reasonable disagreement about what the video depicts." *Kailin v. Vill. of Gurnee*, 77 F.4th 476, 481 (7th Cir. 2023).

2

Throughout the Assessment, Sparks can walk, answer Pieroni's questions without issue, and is otherwise alert. [Dkt. 87 at 12:30-15:00.] He also laughs throughout the encounter. [*Id.*; *see also* Dkt. 83 ¶ 26.] During the Assessment, Pieroni wiped blood from Sparks's face, examined his forehead and asked if he had any injuries. [*Id.*; *see also* Dkt. 83 ¶ 14.] Sparks told Pieroni that he had some pain in the front of his head where the hematomas were located but denied any other injuries. [Dkt. 87 at 13:30-13:45; 14:05-14:30.] Sparks also told Pieroni during the Assessment that he is allergic to ibuprofen. [*Id.*; *see also* Dkt. 80-3 at 2 (confirming ibuprofen allergy).][2]

At the conclusion of the Assessment, Sparks did not request, and Pieroni did not offer, an ice pack or pain medication. [*Id.* at 12:30-15:00.] This is true even though Pieroni agrees that providing comfort measures such as icepacks or pain mediation are within the standard of care and head injuries are painful. [Dkt. 91 ¶¶ 15, 17.]

Sparks received both an ice pack and Tylenol within a few hours of the altercation later that evening. [Dkt. 83 ¶ 28.] According to Pieroni, she did not provide either treatment to Sparks in part because she needed to finish the med pass, in part because she did not have an ice pack on hand during the Assessment, and in part because she did not have Sparks's medical chart during the Assessment, so she could not confirm that any medicine she provided would not interfere with Sparks's allergies or current medications. [Dkt. 80-1 at 60:11-65:9; *see also* Dkt. 83 ¶ 28.]

---

[2]   Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

3

Pieroni also knew that Sparks would be seen again later that evening during nursing rounds. [*Id.* ¶ 29.]

After the med pass, Pieroni documented her interaction with Sparks, and scheduled him for neurological evaluations on April 26 and 27. [*Id.* ¶¶ 14-15, 30-31.] Sparks scored highly on the neurological exam at the evaluations, which indicate he did not have a latent, more serious head injury. [Dkt. 80-3 at 8.] In addition, the doctors noted that his injuries were healing well, and Sparks did not complain of any injuries beyond the occasional headache. [*Id.*; *see also* Dkt. 83 ¶¶ 14-15, 30-31.] Sparks received Tylenol and ice packs every time he requested them thereafter until the swelling on his forehead subsided. [Dkt. 83 ¶ 15.]

## II. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Birch|Rea Partners, Inc. v. Regent Bank*, 27 F.4th 1245, 1249 (7th Cir. 2022). The Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532 (7th Cir. 2013) (citation omitted). The Court "may not make credibility determinations, weigh the evidence, or decide which

inferences to draw from the facts; these are jobs for a factfinder." *Johnson v. Rimmer*, 936 F.3d 695, 705 (7th Cir. 2019).

### III. Analysis

When analyzing whether a defendant provided adequate medical care to a pretrial detainee, the Seventh Circuit instructs the Court to apply an objective reasonableness test. *Miranda v. Cty. of Lake*, 900 F.3d 335 (7th Cir. 2018). Under this test, a court "asks whether the medical defendants acted purposefully, knowingly, or perhaps even recklessly when they considered the consequences of their handling of [Sparks's] case. A showing of negligence or even gross negligence will not suffice." *McCann v. Ogle Cty.*, 909 F.3d 881, 886 (7th Cir. 2018) (cleaned up). The Court also asks "whether the challenged conduct was objectively reasonable. This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively … whether the response was reasonable." *Id.* (cleaned up).

Ultimately, to avoid summary judgment under this standard, Sparks must "demonstrate that genuine issues of material fact exist on two questions: (1) whether he suffered from an objectively serious medical condition and (2) whether the medical staff's response to it was objectively unreasonable." *Williams v. Ortiz*, 937 F.3d 936, 942-43 (7th Cir. 2019). Finally, because Sparks claims Pieroni delayed in providing treatment, he must submit "verifying medical evidence that [defendant's] alleged delay in care caused him some degree of harm." *Summers v. Standiford*, 2022 WL 3908673, at *5 (N.D. Ill. Aug. 30, 2022) (citing *Miranda*, 900 F.3d 335 at 347). This

5

can be established through medical records, *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008), but plaintiff must show "that the delay (rather than the inmate's underlying condition) caused some degree of harm." *Williams v. Liefer*, 491 F.3d 710, 714-715 (7th Cir. 2007).

Here, Sparks claims Pieroni acted in an objectively unreasonable manner when she failed to provide Sparks with an ice pack or pain medication for his hematomas and head pain immediately following the Assessment. [Dkt. 85 at 3.]

### A. Objectively Serious Medical Condition

Sparks can only proceed on his claim against Pieroni if the injuries he presented during the Assessment constitute an objectively seriously medical condition. *Williams*, 937 F.3d 936, 942; *see also Summers*, 2022 WL 3908673, at *3. The Court concludes they do not.

An objectively serious medical condition must be "diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (cleaned up). It need not be life-threatening, but merely "a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated." *Palmer v. Franz*, 928 F.3d 560, 564 (7th Cir. 2019).

Sparks argues that his hematomas and head pain meet this standard because "[h]ead injuries are the type of injury that a reasonable person would consider to be severe, considering the potential harm that could result from such an injury." [Dkt. 85 at 6.] Moreover, based on Pieroni's examination of the hematomas during the Assessment, "a lay person would clearly understand that Plaintiff's condition would

6

result in further significant injury or unnecessary and wanton infliction of pain if not treated" because Pieroni knew he was in pain. [*Id.*; *see also id.* at 7 ("Injuries to the head are dangerous and have a potential for harm when not properly treated.")] According to Sparks, "treated" in this situation was providing Sparks with pain medication and an ice pack. [*Id.* at 7 ("Plaintiff was not given a complete examination or offered an icepack or pain medication, despite the nature of his injuries.")]

Defendant responds that Sparks did not suffer any injury other than the head pain from the hematomas (regardless of the potential for injury), and that Sparks's demeanor during the Assessment shows he did not have a serious injury. [Dkt. 90 at 8.] Defendant further contends that the medical records from the neurological assessments he received in the days following the altercation (scheduled by Pieroni) confirmed that Sparks in fact did not have any additional injury. [*Id.* at 8-9.]

The Court agrees with Defendant that Sparks has provided the Court with no evidence that he incurred any injury beyond head pain stemming from the hematomas on his forehead. Courts in this district routinely find that these types of injuries are not objectively serious medical conditions. *See e.g., Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 829 (7th Cir. 2009) (the refusal "to dispense bromides for … minor aches and pains or a tiny scratch or a mild headache or minor fatigue-- the sorts of ailments for which many people who are not in prison do not seek medical attention--does not by its refusal violate the Constitution"); *Nevarez v. Sweeney*, 2019 WL 4694933, at *7 (N.D. Ill. Sept. 25, 2019) (bruises on plaintiff's head insufficient to be serious medical condition); *Haskins v. Sumulong*, 2017 WL 1178223, at *5 ("cuts

7

and bruises generally are not deemed to constitute serious medical needs"); *Kendricks v. Williams*, 2021 WL 1577800, at *4 (N.D. Ill. Apr. 22, 2021) (concluding on summary judgment that abrasion and swollen hand not serious medical condition, noting that while "these injuries may have caused discomfort, there is no evidence that a lay person would perceive the injuries as particularly serious at the time of the incident"); *Willis v. Pfister*, 2024 WL 216672, at *10 (N.D. Ill. Jan. 19, 2024) (observing in the summary judgment context that "headaches, standing alone, don't usually require a doctor visit" and are not objectively serious medical conditions.)

There are no disputed facts before the Court to differentiate Sparks's injuries with the non-actionable headaches and bruises cited above. True, head injuries have the potential to be serious, but the medical records show that Sparks had no neurological injuries from the altercation, and that Tylenol and ice packs were all that were needed to remedy his injuries. [Dkt. 80-3 at 7-8, 11.] These remedies require neither "diagnosis by physician" or even a "doctor's attention." *Gayton*, 593 F.3d 610 at 620. Rather, they are the types of treatment for non-actionable injuries "for which many people who are not in prison do not seek medical attention." *Rodriguez*, 577 F.3d at 829.

This is not to suggest that Plaintiff was not in pain after the Assessment. But there is a difference between discomfort and an objectively serious medical condition that raises Constitutional Due Process concerns. *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997) (not "every ache and pain or medically recognized condition involving some discomfort" is an objectively serious medical condition.) Here, viewing

8

the evidence in a light most favorable to Sparks, no reasonable jury could conclude that he suffered from an objectively serious medical condition. Thus, no genuine issue of material fact remains as to the first prong of Sparks's improper medical treatment claim.

### B. Objective Reasonableness of Pieroni's Actions

Even if the Court were to find that Plaintiff's injuries were sufficiently serious, his claim would still fail because Pieroni did not act objectively unreasonably in treating Sparks. Consistent with the objective reasonableness standard, the "state-of-mind requirement is measured against each defendant's actions (that is, whether they intentionally or recklessly engaged in the action), rather than their subjective views of the risks of the allegedly inadequate medical care." *Taylor v. Dart*, 2022 WL 4483908, at *6 (N.D. Ill. Sept. 27, 2022) (quoting *Gaston v. Beatty*, 2020 WL 1288878, at *4 (N.D. Ill. Mar. 18, 2020)). The full context of Pieroni's treatment of Sparks is relevant when evaluating the reasonableness of her actions. *McCann*, 909 F.3d at 886 ("This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable.") Here, Pieroni's "action" was failing to provide the ice pack and pain medication.

As summarized above, the undisputed facts show as follows: Pieroni stopped working on a time-sensitive med pass (where other inmates were waiting for their medicine to be administered) to conduct the Assessment. The purpose of the Assessment was to ensure the inmate does not require emergency or additional

9

medical needs. During the Assessment, Sparks informed Pieroni that his forehead was in pain, but that he had no other injuries and that he is allergic to ibuprofen. Sparks was alert, communicated, walked, and laughed throughout the Assessment. At the end of the Assessment, Sparks did not ask Pieroni for an ice pack or pain medication. All of this supports the conclusion that Sparks was not suffering from an emergency condition nor was he in inordinate pain. After the Assessment, Pieroni finished her med pass and then scheduled Sparks for neurological evaluations to be conducted the following day. Within hours of the altercation, he received both Tylenol and an ice pack, and continued to receive both upon request until his hematomas subsided.

Sparks's arguments as to why Pieroni's conduct was objectively unreasonable are unavailing. Above all, he contends that Pieroni failed to provide him with an ice pack or medication, claiming "[t]here was nothing preventing Defendant from providing Plaintiff with an ice pack and Tylenol immediately after the altercation. Defendant simply elected not to do it." [Dkt. 85 at 7.] As a preliminary matter, the Court has difficulty seeing how this failure, even divorced from its context, rises to the level of an objectively unreasonable response, as opposed to mere "negligence or even gross negligence." *McCann*, at 886. This is particularly true where Sparks irrefutably received both an ice pack and pain medication within a few hours of his injuries. *See Love v. Dart*, 2022 WL 797051, at *4 (N.D. Ill. Mar. 16, 2022) (collecting

10

cases where failing to provide pain medication immediately for inmate with modest injuries is not objectively unreasonable).

But more fundamentally, the undisputed facts show that Pieroni had several undisputed reasons for not providing Sparks with this treatment immediately. First, the main purpose of the Assessment was to ensure Sparks did not require emergency medical care, something Pieroni determined in her medical judgment. This is also corroborated by the video evidence and ultimately through the medical records. Upon completing the Assessment, Pieroni needed to finish delivering medicine to other inmates as part of the time-sensitive med pass. [Dkt. 83 ¶ 20; Dkt. 80-1 at 60:11-65:9.] And because she was on a med pass while performing the Assessment, Pieroni did not have an ice pack nor Sparks's medical chart at her disposal. Without Sparks's medical chart, it would have been irresponsible—indeed, reckless—to give Sparks pain medication not only because she did not know whether Sparks was on any other medication at the time, but also because Sparks told Pieroni he was allergic to ibuprofen. [Dkt. 90 at 5.]

On these facts, and even construing all reasonable inferences in Sparks's favor, no reasonable jury could find that Pieroni's decision to resume the med pass instead of immediately giving Sparks an ice pack or Tylenol was objectively unreasonable. *McCann*, 909 F.3d at 887; *Kendricks*, 2021 WL 1577800, at *4 ("Failing to provide immediate medical attention for an abrasion and a swollen hand does not rise to reckless conduct.") This is particularly true where Sparks did not even ask Pieroni for an ice pack or pain medication during or after the Assessment. Although Sparks

11

was undoubtedly in pain at the conclusion of the Assessment, his failure to ask for an ice pack or pain medication informs the reasonableness of Pieroni's conduct. *See Braun v. Vill. of Palatine*, 495 F.Supp.3d 616, 621 (N.D. Ill. 2020) (plaintiff's failure to request any medical treatment supports finding that defendant did not act unreasonably); *Harris v. Vance*, 2019 WL 3804705, at *2 (E.D. Wis. Aug. 13, 2019) (pretrial detainee's failure to request treatment informs objective reasonability of defendant's response). Pieroni also knew that Sparks would be seen by other nursing staff within a few hours, and they could provide him with an ice pack or pain medication if requested.[3]

Finally, to ensure that Sparks had no latent head injuries that could not be identified during the Assessment, Pieroni scheduled Sparks for neurological examinations the following two days. Taken together, the circumstances surrounding Pieroni's conduct show that there is no genuine issue of fact as to whether she acted objectively reasonably in treating Sparks.

### C. Verifying Medical Evidence

To the extent additional reasoning is required, Sparks has also failed to show there is a genuine issue of fact "that the delay (rather than the inmate's underlying condition) caused some degree of harm." *Williams*, 491 F.3d 710 at 714-715. Sparks claims he has satisfied this requirement because the undisputed facts show that he did not receive either an ice pack or pain medication for several hours. [Dkt. 85 at 7.]

---

[3] Sparks argues that ice packs and pain medication are part of the standard of care at Will County Jail, [Dkt. 85 at 9], but does not point to any evidence that these need to be administered immediately and automatically even where an inmate does not request them.

This is true, but insufficient. Rather, the plaintiff "must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." *Williams*, at 715. As Defendant notes, Sparks has failed to provide any evidence that the delay in giving him an ice pack or Tylenol caused him any harm beyond suffering the injuries in the first place. [Dkt. 90 at 5-6.]

### IV. Conclusion

For the reasons stated herein, Defendant Pieroni's motion for summary judgment is granted.

Enter: 20-CV-3765
Date: January 31, 2024

_____
Lindsay C. Jenkins
United States District Judge